# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| IVAN FICKEN *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 09-0345 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 17, 24, 26, 27, 28, 29 |
| | : | | |
| OLIVIA GOLDEN *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## <u>MEMORANDUM OPINION</u>

**DENYING THE PLAINTIFFS' MOTION TO REMAND; GRANTING THE MOTIONS TO DISMISS FILED BY DEFENDANTS EVELYN FURSE, COVINGTON & BURLING, LLP, THE FRENCH INTERNATIONAL SCHOOL AND STEIN LUNDEBYE, AND DISMISSING THE CLAIMS AGAINST ALL DEFENDANTS; DENYING THE PLAINTIFFS' MOTION FOR RELIEF UPON RECONSIDERATION; DENYING AS MOOT THE PLAINTIFFS' MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL**

## I. INTRODUCTION

This matter is before the court on the plaintiffs' motion to remand; the motions to dismiss filed by defendants Evelyn Furse, Covington & Burling, LLP ("Covington"), the French International School ("FIS") and Stein Lundebye; the plaintiffs' motion for relief upon reconsideration; and the plaintiffs' motion for certification for interlocutory appeal. The plaintiffs, Ivan Ficken and his adopted son, Ciprian Ivanov, have asserted a host of constitutional, statutory and common law claims against the defendants, arising out of child neglect proceedings commenced in November 1998 against plaintiff Ficken. For the reasons discussed below, the court denies the plaintiffs' motions, grants the aforementioned defendants' motions to dismiss and dismisses the claims against all defendants.

## II. FACTUAL & PROCEDURAL BACKGROUND

As the plaintiff readily acknowledges, "the present cause of action at issue here largely duplicates . . . Plaintiffs' previous claim in this Court which was denominated CV04-350." Pl.'s Mot. to Remand at 3. Indeed, a brief review of the complaint in *Ficken v. Golden*, an action commenced in this court in March 2004 ("the 04-350 Action"), and the complaint filed in this action indicates that the two cases are based on the same events, concern almost identical causes of action and, with the exception of defendants Furse and Covington, involve exactly the same parties. *Compare* Compl., *Ficken v. Golden*, Civ. Action No. 04-0350 (D.D.C. Mar. 4, 2004) *with* Compl. Accordingly, a detailed presentation of the factual allegations underlying this case may be found in a decision in the 04-350 Action and will not be repeated here. *See Ficken v. Golden*, Civ. Action No. 04-0350 (D.D.C. Mar. 24, 2005) (Mem. Order) (Urbina, J.) at 1-6.

The 04-350 Action proceeded in the following manner. In decisions issued on March 24, 2005 and October 11, 2005, the court dismissed the claims against the individually named defendants, as well as the plaintiffs' claims for defamation, negligent infliction of emotional distress and violations of the Fair Housing Act. *See generally id*.; *Ficken v. Golden*, Civ. Action No. 04-0350 (D.D.C. Oct. 11, 2005) (Order). On September 18, 2006, the court ordered the plaintiffs to file a more definite statement of the claims set forth in their 172-page complaint, warning that failure to comply could result in dismissal of the case. *See generally Ficken v. Golden*, Civ. Action No. 04-0350 (D.D.C. Sept. 18, 2006) (Order). The plaintiffs failed to comply with the court's order, and on December 27, 2007, the court dismissed the plaintiffs' complaint in its entirety. *See Ficken v. Golden*, Civ. Action No. 04-0350 (D.D.C. Dec. 27, 2007) (Order). During the pendency of the 04-350 Action, the plaintiffs filed numerous motions for

reconsideration, appeals to the Circuit and petitions for a writ of certiorari to the Supreme Court, all of which were unsuccessful.

On December 9, 2008, the plaintiffs filed this complaint in the Superior Court for the District of Columbia. *See* Notice of Removal, Ex. 1. On the same day, the plaintiffs filed an identical complaint in this court, together with a motion to proceed *in forma pauperis*, which was assigned to Judge Kennedy.[1] *See* Pls.' Mot. to Remand 6. Defendants Fenty and the D.C. Office of the Attorney General filed a Notice of Removal on February 20, 2009, removing the Superior Court action to this court. *See generally* Notice of Removal.

On March 20, 2009, defendant Fenty filed a motion to dismiss the claims against him, asserting improper service of process and res judicata. *See generally* Fenty Mot. to Dismiss. The following day, the court issued an order advising the plaintiff that his failure to respond to defendant Fenty's motion to dismiss could result in the dismissal of his claims. *See* Order (Mar. 21, 2009). After the plaintiff failed to file a timely opposition, the court granted defendant Fenty's motion to dismiss as conceded. *See* Order (Apr. 8, 2009).

On the same day defendant Fenty moved to dismiss, the plaintiffs filed a motion to remand this action back to the Superior Court. *See generally* Pls.' Mot. to Remand. The plaintiffs subsequently filed motions for relief upon reconsideration of the order granting as conceded defendant Fenty's motion to dismiss, *see generally* Pls.' Mot. for Recons., and a motion requesting that the court certify that order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), *see generally* Pls.' Mot. for Certification.

---

[1]     Judge Kennedy denied the plaintiffs' motion to proceed *in forma pauperis*, as well as their motion for reconsideration of that denial. *See generally Ficken v. Golden*, Misc. Action No. 09-0071 (D.D.C. Mar. 10, 2009) (Mem. Op.) (Kennedy, J.).

On April 20, 2009, defendant FIS filed a motion to dismiss the claims against it citing res judicata, in which defendant Stein Lundebye joined.  *See generally* FIS Mot. to Dismiss; S. Lundebye Mot. to Dismiss.  The same day, defendants Furse and Covington filed a motion to dismiss based on the plaintiffs' purported failure to state a cognizable claim against those defendants.  *See generally* Furse & Covington Mot. to Dismiss.  With all the aforementioned motions fully submitted, the court turns to the parties' arguments and the applicable legal standards.

## III.  ANALYSIS

### A.  The Court Denies the Plaintiffs' Motion to Remand

The plaintiffs contend that this action should be remanded to the Superior Court, where it was originally filed, because not all of the defendants expressly consented to removal.  *See* Pls.' Mot. to Remand at 1.  The defendants respond that this procedural defect does not warrant remand and that, at any rate, the plaintiffs have waived any right they may have had to remand by affirmatively invoking the jurisdiction of this court.  *See generally* Defs.' Opp'n to Pls.' Mot. to Remand.[2]

As the plaintiffs rightly point out, in a multi-defendant case, removal requires the unanimous consent of all defendants served with the complaint.  *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (noting that "[o]rdinarily . . . all defendants in a state action must join in the petition for removal, except for nominal, unknown or fraudulently joined parties"); *Williams v. Howard Univ.*, 984 F. Supp. 27, 29 (D.D.C. 1997) (observing that

---

[2]  Defendants Furse and Covington filed an opposition to the plaintiffs' motion to remand, in which all of the other defendants joined.  *See generally* FIS Opp'n to Pls.' Mot. to Remand; S. Lundebye Opp'n to Pls.' Mot. to Remand; Fenty Opp'n to Pls.' Mot. to Remand.

"it is well established that removal generally requires unanimity among the defendants")

(quoting *Balazik v. County of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995)); *see also* 28 U.S.C. §

1441(a). Although defendants FIS, Furse and Covington expressly consented to removal, the

remaining defendants have not expressed their consent or objection to removal. *See* Defs.'

Opp'n to Pls.' Mot. to Remand. The absence of express unanimity among the defendants

authorizes the court to remand the case to the Superior Court. *See Lapoint v. Mid-Atl. Settlement*

*Servs., Inc.*, 256 F. Supp. 2d 1, 3 (D.D.C. 2003) (remanding the case based on the absence of

unanimous consent); *accord Williams*, 984 F. Supp. at 29.

It is, however, equally clear that "[a] procedural defect in removal . . . does not affect the

federal court's subject matter jurisdiction and therefore may be waived." *Koehnen v. Herald*

*Fire Ins. Co.*, 89 F.3d 525, 528 (8th Cir. 1996); *cf.* 28 U.S.C. § 1447(c) (requiring remand in the

absence of subject matter jurisdiction).[3] Indeed, "[a] party that engages in affirmative activity in

federal court typically waives the right to seek a remand." *Koehnen*, 89 F.3d at 528; *see also*

*Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 905 (6th Cir. 1988) (holding that the plaintiff

waived her right to object to procedural defects in the removal proceedings by filing requests for

discovery, entering into stipulations and seeking to amend her complaint); *Riggs v. Plaid*

*Pantries, Inc.*, 233 F. Supp. 2d 1260, 1271 (D. Or. 2001) (concluding that the plaintiffs waived

any right to seek remand by filing motions in the federal court).

The plaintiffs acknowledge that the Superior Court complaint "largely duplicates" the

complaint they previously filed in this court in the 04-350 Action. Pls.' Mot. to Remand at 3.

The plaintiffs also acknowledge that on the same date they filed their Superior Court complaint,

they filed an identical complaint in this court, together with a motion to proceed *in forma*

---

[3]     Because the claims in the complaint filed in Superior Court raise federal questions, this court has
        subject matter jurisdiction over those claims. *See* 28 U.S.C. § 1331.

*pauperis*.[4] Pls.' Mot. to Remand at 6 (stating that "Plaintiffs have filed essentially the same cause of action in both the DC Superior Court as well as the DC Federal Court"); *see also* Defs.' Opp'n to Pls.' Mot. to Remand, Ex. B. Thus, on at least two prior occasions, the plaintiffs have affirmatively invoked federal jurisdiction over the claims raised in the Superior Court complaint. *See* Pls.' Mot. to Remand at 3, 6. In so doing, they have waived any right to remand they may have otherwise had based on procedural defects in the removal of this action.[5] *See Koehnen*, 89 F.3d at 528 (concluding that the plaintiff waived any procedural defect in connection with removal by moving to file a supplemental complaint in the federal court and participating in oral argument on the motion); *Moffit v. Balt. Am. Mortgage*, 665 F. Supp. 2d 515, 517 (D. Md. 2009) (holding that the plaintiffs waived any right to seek remand by filing a second amended complaint in federal court); *see also Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998) (noting that "plaintiffs cannot voluntarily invoke, and then disavow, federal jurisdiction") Accordingly, the court denies the plaintiffs' motion to remand.

---

[4]    Even when a motion for leave to proceed *in forma pauperis* is denied, the complaint is still "deemed 'filed' . . . for purposes of invoking the court's jurisdiction over an action when it is placed in the custody of the district court clerk." *Smith-Bey v. Hosp. Adm'r*, 841 F.2d 751, 757 n.5 (7th Cir. 1988).

[5]    Indeed, the plaintiffs make clear that they "[do] not mind their claims being adjudicated in Federal Court," and that they seek remand so that "their cases will remain filed in separate courts, at least up until and perhaps beyond the point at which it becomes clear whether the Federal Court will treat its earlier dismissal of [the 04-350 Action] as being with or without prejudice." Pls.' Mot. to Remand at 5. Remand is plainly inappropriate under circumstances in which the plaintiffs expressly engage in forum shopping. *See Legal Aid Soc'y v. City of New York*, 1998 WL 689950, at *2 (S.D.N.Y. Sept. 30, 1998) (denying the plaintiffs' motion for remand designed to maintain parallel actions in state and federal court).

**B. The Court Grants the Defendants' Motions to Dismiss**

**1. The Court Dismisses the Claims Against Defendants Furse and Covington**

From March 1998 to May 2000, defendant Furse was employed as a litigation associate at Covington. Furse & Covington Mot. to Dismiss at 2. From June to December 1999, defendant Furse served as a full-time Special Assistant Corporation Counsel for the District of Columbia while taking part in a pro bono rotation through that firm. *Id.* In that capacity, defendant Furse prosecuted numerous child abuse and neglect actions on behalf of D.C. Child & Family Services Agency ("CFSA"), including the case against plaintiff Ficken. *Id.*

The plaintiffs accuse Furse of failing to exercise proper "prosecutorial discretion in pursuit of Plaintiffs on behalf of CFSA," Compl. ¶ 45, failing to properly investigate the plaintiffs' case, *id.* ¶ 129, failing to challenge the court's "objectivity in judging the case," *id.*, and choosing not to interview or discuss the case with plaintiff Ficken, *id.*, among a host of other alleged misdeeds. The plaintiffs also assert that Covington is liable for the tortious actions of defendant Furse under the doctrine of respondeat superior. *Id.* ¶ 132.

**a. Legal Standard for a Rule 12(b)(6) Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48

(internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

### b. The Plaintiffs Have Failed to State a Claim Against Defendants Furse and Covington

Defendant Furse contends that the plaintiffs' claims against her must be dismissed because she has absolute immunity for suits against her in her official capacity as a prosecutor for the District. Furse & Covington Mot. to Dismiss at 5-8. Defendant Covington asserts that because defendant Furse cannot be held liable, the plaintiffs' claims against her employer must also be dismissed. *Id*. at 8. Furthermore, Covington contends that, at any rate, the doctrine of respondeat superior does not apply here because defendant Furse was not acting in the scope of her employment with Covington during the prosecution of Ficken. *Id*. at 8-10.

The plaintiffs respond that "since the District of Columbia . . . is not entitled to absolute immunity for its inappropriate actions which inflicted unjustified harm upon Plaintiffs, neither should a prosecutor who represented [the District], particularly when some of Ms. Furse's actions and advocacy were completely *ultra vires* to the role she was tasked with fulfilling." Pls.' Opp'n to Furse & Covington Mot. to Dismiss at 3; *see also id.* at 14-18. In addition, the plaintiffs state that Covington "could have and should have provided sufficient training to Ms. Furse (but apparently did not) to differentiate what kinds of actions she could appropriately engage in as a prosecutor upon her assuming the six month, full-time *pro bono* rotation." *Id*. at 3; *see also id.* at 18-23.

The Supreme Court has held that prosecutors enjoy absolute immunity from civil suits based on their conduct in initiating and pursuing a criminal prosecution. *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (holding that prosecutors are absolutely immune for activities "intimately associated with the judicial process" such as initiating and pursuing a criminal prosecution). This absolute immunity extends to agency officials performing functions analogous to those of a prosecutor. *Butz v. Economou*, 438 U.S. 478, 515 (1978) (observing that

"agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts"); *see also Briscoe v. LaHue*, 460 U.S. 325, 335-36 (1983) (holding that all persons who are integral parts of the judicial process, such as witnesses, judges and prosecutors, are entitled to absolute immunity).

Indeed, this Circuit has held that absolute immunity protects government attorneys for their conduct in initiating and prosecuting civil child neglect cases. *Gray v. Poole*, 243 F.3d 572, 577 (D.C. Cir. 2001) (noting that in so holding, this Circuit joined with every Circuit to have addressed the issue); *accord Snell v. Tunnell*, 920 F.2d 673, 692-94 (10th Cir. 1990) (holding that social services attorneys were entitled to absolute immunity for actions related to the prosecution of child neglect and delinquency proceedings); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 397 n.11 (4th Cir. 1990) (same); *see also Meyers v. Contra Costa County Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987) (holding that "social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings"). This Circuit's decision in *Gray* arose out of child neglect proceedings initiated by the District against the plaintiff, who had served as the custodian of his minor brother. *Gray*, 243 F.3d at 574. The plaintiff commenced an action under 42 U.S.C. § 1983 against the Special Assistant Corporation Counsel who had prosecuted the case. *Id*. The district court dismissed these claims, concluding that she was absolutely immune from suit. *Id*. at 574-75. The Circuit affirmed, holding that all of the allegations against the Special Assistant Corporation Counsel concerned her conduct in connection with the child neglect proceedings and therefore fell within the scope of absolute immunity. *Id*. at 578.

As in *Gray*, the plaintiffs' claims against defendant Furse arise out of her role as a Special Assistant Corporation Counsel for the District of Columbia.[6] *See* Compl. ¶¶ 45, 129. Moreover, as in *Gray*, the plaintiffs' claims against defendant Furse all arise out of her conduct in prosecuting the child neglect case against plaintiff Ficken, such as improperly instituting the child neglect proceedings, requesting that the court appoint counsel for Carolina Lundebye and advancing (and, in other instances, failing to advance) various arguments to the court. *See* Compl. ¶¶ 45, 49; *see generally* Pls.' Opp'n to Furse & Covington Mot. to Dismiss. Indeed, the plaintiffs do not allege that defendant Furse injured them in any manner outside the scope of the neglect proceedings. *See generally* Compl. Accordingly, the plaintiffs' claims against defendant Furse fall within the scope of her absolute immunity and must be dismissed.[7]

The dismissal of all claims against defendant Furse also requires the dismissal of the plaintiffs' claims against Covington, which are all premised on Covington's purported vicarious liability for the actions of defendant Furse under the doctrine of respondeat superior. *See* Compl. ¶¶ 62-66, 77, 79-90, 130-32, 171, 175. Vicarious liability "is not an independent cause of

---

[6]     Like defendant Furse, the Special Assistant Corporation Counsel in *Gray* was a Covington associate serving on a temporary pro bono rotation with the District government. *See Gray v. Poole*, 243 F.3d 572, 574 n.1 (D.C. Cir. 2001).

[7]     The plaintiffs attempt to distinguish *Gray* by reciting their specific allegations against defendant Furse, who, they argue, fell under the undue influence of defendant Carolina Lundebye and is not entitled to immunity based on the "egregious" nature of her actions. *See* Pls.' Opp'n to Furse & Covington Mot. to Dismiss at 12-17. Yet the plaintiffs entirely fail to demonstrate how the central holding of *Gray* – that government attorneys enjoy absolute immunity from civil suits based on their conduct in initiating and prosecuting child neglect actions – does not apply to their claims against defendant Furse. *See id.* Furthermore, even if it were the case that defendant Furse had acted in bad faith and fallen under the "spell" of Carolina Lundebye, such behavior would not vitiate the absolute immunity conferred under *Gray* and *Butz*. *See Gray*, 243 F.3d at 575 (noting that "[w]here absolute immunity is deemed appropriate, an official is protected from all suits attacking conduct within the scope of the immunity, even if the official is alleged to have acted in bad faith"); *cf. Moore v. Valder*, 65 F.3d 189, 194 (D.C. Cir. 1995) (holding that prosecutors are absolutely immune from liability for their "knowing or inadvertent" failure to disclose materially exculpatory evidence).

action," but instead "a legal concept employed to transfer liability from an agent to a principal at trial." *Hayes v. Chartered Health Plan, Inc.*, 360 F. Supp. 2d 84, 90 (D.D.C. 2004) (citing *Crawford v. Signet Bank*, 179 F.3d 926, 929 (D.C. Cir. 1999)).  Thus, "[i]n the absence of agent liability, no liability can attach to the principal."  *Id.*; *accord Lober v. Moore*, 417 F.2d 714, 718 (observing that "it is settled that a judgment exonerating a servant or agent from liability bars a subsequent suit on the same cause of action against the master or principal based solely on respondeat superior").  Because the plaintiffs' claims against Covington are based solely on its vicarious liability for the actions of defendant Furse under the doctrine of respondeat superior, the dismissal of all claims against defendant Furse requires the dismissal of all claims against Covington.  *See Lober*, 417 F.2d at 718.

The plaintiffs argue that even if defendant Furse were immune from suit, Covington's "lack of appropriate training of Ms. Furse prior to her six month pro bono rotation at the District, as well as the publicity . . . and goodwill benefit which accrued to [Covington] by virtue of [its] participation in the District's six month pro bono rotation . . . should place liability upon [Covington] anyway."  Pls.' Opp'n to Furse & Covington Mot. to Dismiss at 18.  Yet even if the court were to consider this alternative theory of liability, asserted for the first time in their opposition to the defendants' motion to dismiss, the plaintiffs have failed to allege any facts indicating a causal relationship between Covington's alleged failure to properly train defendant Furse and the injuries suffered by the plaintiffs.  *See Keranen v. Nat'l R.R. Passenger Corp.*, 743 A.2d 703, 713 (D.C. 2000) (affirming the dismissal of the plaintiff's negligent training claim because the plaintiff offered only conclusory allegations with no factual basis to support a causal relationship between the alleged negligent training and the plaintiff's injury); *see also James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (observing that denial of leave to

amend is warranted if the proposed claim would not survive a motion to dismiss).  Accordingly, the court grants the motion to dismiss of defendants Furse and Covington.

### 2.  The Court Dismisses the Claims Against the Remaining Defendants

#### a.  Legal Standard for Res Judicata

"The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues."  *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983).  Res judicata has two distinct aspects – claim preclusion and issue preclusion (commonly known as collateral estoppel) – that apply in different circumstances and with different consequences to the litigants.  *NextWave Pers. Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 254 F.3d 130, 142 (D.C. Cir. 2001); *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983).

Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'"  *Id.* (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)).  In making that determination, courts look at "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."  *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)).

Under issue preclusion or collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a

different cause of action involving a party to the first case." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen*, 449 U.S. at 94). Issue preclusion applies if three criteria are met: (1) if in the prior litigation, the issue was "actually litigated, that is, contested by the parties and submitted for determination by the court;" (2) if the prior litigation was "actually and necessarily determined by a court of competent jurisdiction;" and (3) if "preclusion in the second trial [does] not work an unfairness." *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).

In short, "claim preclusion forecloses all that which might have been litigated previously," *I.A.M. Nat'l Pension Fund*, 723 F.2d at 949, while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action," *Novak*, 703 F.2d at 1309. In this way, res judicata helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [] prevent serial forum-shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Allen*, 449 U.S. at 94.

### b. Res Judicata Bars the Plaintiffs' Claims Against All Remaining Defendants

Defendants FIS and Stein Lundebye assert that the plaintiffs' allegations against them are nearly identical to the allegations asserted (and disposed of on the merits) in the 04-350 Action. *See generally* FIS Mot. to Dismiss; S. Lundebye Mot. to Dismiss. Accordingly, they argue, the doctrine of res judicata requires dismissal of these claims.[8] *See generally* FIS Mot. to Dismiss;

---

[8] FIS and Stein Lundebye also argue that the plaintiffs' claims are untimely, and that if the court does not dismiss the claims, it should order the plaintiffs to submit a more definite statement of their claims pursuant to Federal Rule of Civil Procedure 12(e). FIS Mot. to Dismiss at 10-12; S. Lundebye Mot. to Dismiss at 2. Because the court dismisses the claims against the defendants on res judicata grounds, it does not address these alternative arguments.

S. Lundebye Mot. to Dismiss. The plaintiffs do not dispute that the claims they assert in this case are nearly identical to claims asserted in the 04-350 Action. *See generally* Pls.' Opp'n to S. Lundebye Mot. to Dismiss.[9] Nonetheless, they argue that res judicata does not apply "because Plaintiffs' previous case partaking of largely similar issues, never reached a point of consideration of its merits because this Court Order[10] with which Plaintiffs were unable to comply represented to Plaintiffs an impossible task . . . and a dismissal due to impossibility of compliance could not conceivably be considered a dismissal on the merits." *Id.* at 6-7. The plaintiffs maintain that "an attempt to condense their 160+ page Complaint down to only ten pages was beyond anyone's ability to do, and certainly beyond Plaintiffs'." *Id.* at 8. According to the plaintiffs, "a litigant's impossibility of performance of a court order cannot logically be 'a judgment on the merits.'" *Id.*

With the exception of defendants Furse and Covington, every defendant named in this case was also named as a defendant in the 04-350 Action. *Compare* Compl., *Ficken v. Golden*, Civ. Action No. 04-0350 (D.D.C. Mar. 4, 2004) *with* Compl. Furthermore, based on the court's review of the complaint underlying this case and the complaint filed in the 04-350 Action, it is abundantly clear that the two actions arise out of exactly the same events and concern nearly identical allegations and causes of action. *Compare* Compl., *Ficken v. Golden*, Civ. Action No.

---

[9]    The plaintiffs failed to file a separate opposition to FIS's motion to dismiss, although they did file an opposition to S. Lundebye's motion to dismiss, which, as FIS acknowledges in its reply, raised the same arguments asserted in FIS's motion. *See* FIS Reply at 1-2. Rather than granting FIS's motion as conceded, the court will construe the plaintiffs' opposition to S. Lundebye's motion as an opposition to FIS's motion as well.

[10]    The plaintiffs refer to the court's September 18, 2006 Order in the 04-350 Action, in which the court directed the plaintiffs to file a more definite statement of their claims. *See generally Ficken v. Golden*, Civ. Action No. 04-0350 (D.D.C. Sept. 18, 2006) (Order) at 3. The order specified that the statement "shall be presented in sequentially numbered paragraphs, typed, double-spaced, and printed on white paper 11 inches long and 8 ½ inches wide, with margins of 1 inch on each side. It shall not exceed 10 pages in length, and shall not have attachments or exhibits." *Id.*

04-0350 (D.D.C. Mar. 4, 2004) *with* Compl.  Indeed, the plaintiffs expressly acknowledge as much, noting that "the present cause of action at issue here largely duplicates (with substantial editing, additions of dates which this Court wanted, and additional claims being added) Plaintiffs' previous claim in this Court which was denominated CV04-350."  Pl.'s Mot. to Remand at 3.

The plaintiffs do not dispute that the March 24, 2005 and October 11, 2005 orders dismissing many of the plaintiffs' claims constituted resolutions on the merits.  *See generally* Pls.' Opp'n to S. Lundebye Mot. to Dismiss.  It is equally clear that the December 27, 2007 order, dismissing the remainder of the plaintiffs' claims based on their failure comply with the court order directing them to provide a more definite statement, also functioned as a resolution on the merits, as nothing in the order indicated otherwise.[11]  *See* FED. R. CIV. P. 41(b) (authorizing dismissal for failure to comply with a court order and specifying that "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule – except one for lack of jurisdiction, improper venue, or failure to join a party

---

[11]    The plaintiffs' argument that no one would be able to condense their allegations to a short, concise statement appears to stem from their lack of familiarity with notice pleading under Federal Rule of Civil Procedure 8, which requires only "a short and plain statement of the claim," and does not require a claimant to include every detail underlying their allegations in their pleading.  Yet as this court previously noted, "[i]t is the plaintiffs' responsibility to prosecute this action and to follow the Court's orders, rules, and procedures."  *See generally Ficken v. Golden*, Civ. Action No. 04-0350 (D.D.C. Dec. 27, 2007) (Order) at 3 (citing *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996) (noting that a litigant's *pro se* status "does not give a party unbridled license to disregard clearly communicated court orders"); *United States v. Pinkey*, 548 F.2d 305, 311 (10th Cir. 1977) (remarking that "[h]e who proceeds *pro se* with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to become an 'advocate' for or to assist and guide the *pro se* layman through the trial thicket")).

under Rule 19 – operates as an adjudication on the merits");[12] *cf. Karim-Panahi v. U.S. Congress, Senate & House of Representatives*, 2004 WL 1588167, at *3 (D.C. Cir. July 14, 2004) (holding that the district court did not abuse its discretion in dismissing a complaint with prejudice based on the plaintiff's failure to amend the complaint by the deadline imposed by the court).

In short, because this case involves the same parties and arises out of the same nucleus of facts at issue in the 04-350 Action, claim preclusion requires the dismissal of this action against all defendants other than Furse and Covington.[13] *See Drake*, 291 F.3d at 66. Accordingly, the court dismisses the plaintiffs' claims against all remaining defendants.

## C. The Court Denies the Plaintiffs' Motion for Relief Upon Reconsideration

The plaintiffs have filed a motion for relief upon reconsideration of the court's April 8, 2009 order granting defendant Fenty's motion to dismiss as conceded. *See* Order (Apr. 8, 2009).

---

[12]     The plaintiffs also argue that the dismissal of the 04-350 Action under Rule 41(b) was inappropriate because no defendant moved for dismissal based on the plaintiffs' non-compliance with the court's orders. *See* Pls.' Opp'n to S. Lundebye's Mot. to Dismiss at 9. This argument lacks merit. *See Gardner v. United States*, 211 F.3d 1305, 1308 (D.C. Cir. 2000) (observing that sua sponte dismissal under Rule 41(b) is warranted in circumstances in which a party consciously fails to comply with a court order); *cf. Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962) (rejecting the argument that Rule 41(b) prohibits involuntary dismissals for failure to prosecute except upon motion by the defendant as "[n]either the permissive language of the Rule – which merely authorizes a motion by the defendant – nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of the courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief"). Indeed, the Circuit has already affirmed the dismissal of the 04-350 Action, noting that the court did not abuse its discretion "in dismissing appellants' suit after they failed to comply with the order for a more definite statement." *Ficken v. Lundebye*, No. 08-7018 (D.C. Cir. May 16, 2008) (Order).

[13]     Although not every defendant has moved for dismissal on res judicata grounds, because "res judicata belongs to courts as well as to litigants," a court may invoke res judicata *sua sponte*. *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997); *see also Tinsley v. Equifax Credit Info. Servs., Inc.*, 1999 WL 506720, at *1 (D.C. Cir. June 2, 1999) (per curiam) (noting that a district court may apply res judicata upon taking judicial notice of the parties' previous case).

Although the plaintiffs have failed to specify which provision of the Federal Rules governs their motion, the court construes their motion as one to alter or amend an interlocutory judgment pursuant to Federal Rule of Civil Procedure 54(b). *See generally* Pls.' Mot. for Reconsideration.

### 1. Legal Standard for a Motion to Alter or Amend an Interlocutory Judgment

A district court may revise its own interlocutory decisions "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b); *see also Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000) (citing the Advisory Committee Notes to Federal Rule of Civil Procedure 60(b)). Relief upon reconsideration of an interlocutory decision pursuant to Rule 54(b) is available "as justice requires."[14] *Childers*, 197 F.R.D. at 190. "As justice requires" indicates concrete considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court." *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (internal citation omitted). These considerations leave a great deal of room for the court's discretion and, accordingly, the "as justice requires" standard amounts to determining "whether

---

[14]    The standard for the court's review of an interlocutory decision differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b). *Compare Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 42, 48 n.6 (D.D.C. 2001) (noting that "motions for [relief upon] reconsideration of interlocutory orders, in contrast to motions for [relief upon] reconsideration of final orders, are within the sound discretion of the trial court") *and United Mine Workers v. Pittston Co.*, 793 F. Supp. 339, 345 (D.D.C. 1992) (discussing the standard applicable to motions to grant relief upon reconsideration of an interlocutory order) *with LaRouche v. Dep't of Treasury*, 112 F. Supp. 2d 48, 51-52 (D.D.C. 2000) (analyzing the defendant's motion for relief from judgment under Rule 60(b)) *and Harvey v. District of Columbia*, 949 F. Supp. 878, 879 (D.D.C. 1996) (ruling on the plaintiff's motion to alter or amend judgment pursuant to Rule 59(e)). A motion pursuant to Rule 59(e), to alter or amend a judgment after its entry, is not routinely granted. *Harvey*, 949 F. Supp. at 879. The primary reasons for altering or amending a judgment pursuant to Rule 59(e) or Rule 60(b) are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Id.*; *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam); FED. R. CIV. P. 60(b); *LaRouche*, 112 F. Supp. 2d at 51-52.

[relief upon] reconsideration is necessary under the relevant circumstances." *Id.* Nonetheless, the court's discretion under Rule 54(b) is limited by the law of the case doctrine and "subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh*, 383 F. Supp. 2d at 101 (internal citations omitted).

## 2. Relief Upon Reconsideration is Unwarranted

The plaintiffs contend that this court should vacate the April 8, 2009 order dismissing their claims against defendant Fenty because they did not receive a copy of the March 21, 2009 order advising them that their failure to respond in a timely fashion could result in the court granting the motion was conceded. *See* Pls.' Mot. for Recons. at 2-3. They complain that they face numerous disadvantages in responding to the defendants' submissions, having no access to a law library or online legal research services.[15] *Id.* at 4-5. Furthermore, the plaintiffs assert that they reasonably believed that the court would resolve their motion for remand prior to addressing defendant Fenty's motion to dismiss.[16] *Id.* at 6-8. Finally, the plaintiffs argue that "basic human decency" dictates that the court excuse their failure to respond to defendant Fenty's motion to dismiss. *Id.* at 17. Defendant Fenty maintains that the plaintiffs have failed to present any

---

[15]    The plaintiffs also suggest that their emotional involvement in this case engenders "writer's block," which hampers their ability to respond to the defendants' submission. Pls.' Mot. for Recons. at 4-5. Given, however, the plaintiffs' voluminous submissions, including rambling twenty-five page oppositions to the defendants' motions to dismiss, as well as a 179-page complaint, the court has difficulty crediting the plaintiffs' claims of "writer's block."

[16]    Nearly half of the plaintiffs' memorandum is devoted to the accusation that D.C. Attorney General Peter Nickles committed prosecutorial misconduct and ethics violations in seeking removal of this action to federal court. *See* Pls.' Mot. for Reconsideration at 8-16. The issue of removal is addressed in the foregoing section, *see supra* Part III.A, and the court fails to see the relevance of this discussion to the plaintiffs' motion for relief upon reconsideration.

justification for vacating the court's April 8, 2009 order. *See generally* Fenty Opp'n to Pls.'

Mot. for Recons.

As of the date that defendant Fenty's motion was filed, Local Civil Rule 7(b) provided

that

> [w]ithin 11 days of the date of service or at such other time as the Court may
> direct, an opposing party shall file and serve a memorandum of points and
> authorities in opposition to [a] motion.  If such a memorandum is not filed with
> the prescribed time, the Court may treat the motion as conceded.

LCvR 7(b).[17]  Indeed, it is well settled that a plaintiff's failure to respond to a motion to dismiss

permits a court to grant the motion as conceded.  *See Fox v. Am. Airlines, Inc.*, 389 F.3d 1291,

1294-95 (D.C. Cir. 2004) (affirming the district court's dismissal of a complaint based on the

plaintiff's failure to comply with Local Civil Rule 7(b) and file a timely response to the

defendant's motion to dismiss); *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577

(D.C. Cir. 1997) (observing that "[w]here the district court relies on the absence of a response as

a basis for treating the motion as conceded, [the Circuit will] honor its enforcement of the rule");

*see also Cooper v. Farmers New Century Ins. Co.*, 607 F. Supp. 2d 175, 180 (D.D.C. 2009)

(granting the defendant's motion to dismiss as conceded based on the plaintiff's failure to

respond to arguments raised in the motion).

Although defendant Fenty did not attach a certificate of service to his motion to dismiss,

*see generally* Fenty Mot. to Dismiss, the plaintiffs acknowledge having received the motion in an

envelope postmarked March 24, 2009, *see* Pls.' Mot. for Recons. at 7.  Accordingly, the

plaintiffs' opposition was due, at the latest, by April 7, 2009, fourteen days after March 24,

---

[17]     Local Civil Rule 7(b) was amended in December 2009 to require that responses to motions be
         filed within fourteen days of service, in light of the recent amendments to Federal Rule of Civil
         Procedure 6(a).

2009.[18]  The plaintiffs failed to file an opposition by that date.  *See* Order (Apr. 8, 2009).

Accordingly, Local Civil Rule 7(b) authorized the court to grant as conceded defendant Fenty's

motion to dismiss.

The plaintiffs' assertion that they never received a copy of the court's March 21, 2009

order does not warrant relief upon reconsideration.  First of all, the court is skeptical that the

plaintiffs did not receive the order, given that the plaintiffs acknowledge receiving by mail "on

April 6th or 7th" a copy of Judge Kennedy's order denying their motion to proceed *in forma*

*pauperis*, as well as a copy of defendant Fenty's motion to dismiss.  Pls.' Mot. for Recons. at 3.

Furthermore, the plaintiffs cannot be said to lack fair notice of the risks attending failure to

respond to a dispositive motion, *see Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988), given

that plaintiff Ficken holds multiple law degrees, *see* Pls.' Opp'n to Furse & Covington Mot. to

Dismiss at 9 n.4 (claiming that plaintiff Ficken "hold[s] four college degrees, two of which are

even in law (a J.D. and an LL.M)"); *see also Klayman v. Barmak*, 2009 WL 4722803, at *1

(D.D.C. Dec. 4, 2009) (granting the defendant's motion for summary judgment as conceded and

noting that the pro se plaintiff, an experienced attorney, could not claim to have lacked fair

notice of the risks of failing to respond to such a motion); *cf. Ning Ye v. Holder*, 644 F. Supp. 2d

112, 116 (D.D.C. 2009) (observing that "plaintiff is a practicing attorney so there is no reason to

afford him the latitude ordinarily accorded to the typical *pro se* plaintiff"), as well as the fact that

the court has advised the plaintiffs on numerous occasions of the consequences of failing to

respond to a dispositive motion, *see Ficken v. Golden*, Civ. Action No. 04-0350 (D.D.C. Apr. 16,

2004) (Order) (advising the plaintiffs that failure to respond to the defendants' motion to dismiss

---

[18]      Federal Rule of Civil Procedure 6(d) adds three days to the time to respond if service is
accomplished by mail.  FED. R. CIV. P. 6(d).  Accordingly, the plaintiffs had fourteen days to
oppose the motion to dismiss.

could result in the court granting the motion as conceded); *Ficken v. Golden*, Civ. Action No. 04-0350 (D.D.C. May 25, 2004) (Order) (same); *cf. Logan v. Dep't of Veterans Affairs*, 404 F. Supp. 2d 72, 75 n.3 (D.D.C. 2005) (noting that "even if plaintiff never received the Court's *Fox/Neal* Order, the defendant clearly advised plaintiff of her obligation to respond (and the consequences of inaction or insufficient action)").

The plaintiffs' additional arguments are equally without merit. The plaintiffs have presented no legal authority for the contention that their time period for responding to defendant Fenty's motion to dismiss was somehow tolled because they had filed a motion to remand. *See* Pls.' Mot. for Reconsideration at 6-8. Nor do the plaintiffs explain how the issues related to remand, their limited access to legal resources or their emotional investment in this case justifies their failure to file a timely response to a dispositive motion.[19] Accordingly, the court denies the plaintiffs' motion for relief upon reconsideration.

### D. The Court Denies as Moot the Plaintiffs' Motion for Certification for Interlocutory Appeal

The plaintiffs ask this court to certify its April 8, 2009 order, granting defendant Fenty's motion to dismiss as conceded, for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *See generally* Pls.' Mot. for Certification. Given that the court has dismissed all of the plaintiffs' claims against all of the defendants, this motion for an interlocutory appeal is now moot. *See* 28 U.S.C. §§ 1291-92.

---

[19] At any rate, even if the court were to vacate its prior order, res judicata would bar the claims against defendant Fenty. *See supra* Part III.B.2.

22

## IV.  CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion to remand, grants the motions to dismiss of the defendants Furse, Covington, FIS and Stein Lundebye, dismisses the claims against all defendants and denies the plaintiffs' motion for reconsideration and motion for certification of an interlocutory appeal.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 16th day of March, 2010.

RICARDO M. URBINA
United States District Judge